## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| E.H. and R.H., individually and on behalf of their daughter, K.H., | : |
| | : |
| | : **CIVIL ACTION** |
| T.C. and M.C., individually and on behalf of their daughter, E.C., | : |
| | : |
| | : |
| G.K. and W.M., individually and on behalf of their son, E.K., | : |
| | : |
| | : |
| J.B. and J.B., individually and on behalf of their daughter, G.B., | : |
| | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| v. | : |
| | : |
| **WISSAHICKON SCHOOL DISTRICT,** | : **No. 19-5445** |
| **Defendant.** | : |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                        **October 27, 2020**

Plaintiffs in this action are four pairs of parents, individually and on behalf of their children, who prevailed in special education due process hearings in 2019 alleging violations of the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act ("ADA") against Defendant Wissahickon School District (the District or Wissahickon). Plaintiffs were all represented by Judith A. Gran of Reisman Carolla Gran & Zuba LLP in their individual administrative proceedings. Plaintiffs now seek attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3). After engaging in unsuccessful settlement efforts, Plaintiffs filed the present motion for attorneys' fees and costs, and the District has opposed. The Court grants the motion, in part, and orders the District to pay reasonable fees and costs.

## I.     BACKGROUND

Plaintiffs are four sets of parents of children with disabilities, as defined by the IDEA, who each filed due process complaints against the Wissahickon School District. The facts of each administrative proceeding, as set forth below, are drawn from the decision of each hearing officer. No party appealed the decision on the administrative record in any of these cases.

### 1.   K.H.

K.H., a kindergarten student in the 2018-19 school year, has Attention Deficit Hyperactivity Disorder, Global Developmental Delay, and a language disorder. (Doc. No. 1-1, [Hr'g Officer Decisions] at 4-5.) K.H. was provided early intervention services during preschool and had an Individualized Education Program (IEP) in place during the 2017-18 preschool year. (*Id.* at 5-6.) After a reevaluation in the spring of 2018, the District proposed an IEP for the 2018-19 school year that would have placed K.H. in an autistic support classroom for 2.5 hours per day at a school that was not K.H.'s neighborhood school. (*Id.* at 6-10.) K.H.'s parents did not approve the proposed 2018-19 IEP. (*Id.* at 10.) While the due process complaint was pending, the District agreed that the 2017 IEP would remain in place. (*Id.* at 11.)

The hearing officer identified six discrete issues in K.H.'s complaint but noted that the "primary objection" was that the District's proposed IEP "did not comport with the least restrictive environment principles embodied in the IDEA…." (*Id.* at 3-4.) The hearing officer found that the District's 2018 reevaluation of K.H. was insufficient and the proposed IEP was substantively inappropriate and not in compliance with the least restrictive environment (LRE) principles. (*Id.* at 23-29.) However, the hearing officer found that the IEP's proposed placement had not been predetermined. (*Id.* at 28.) The decision ordered the District to implement a publicly funded independent evaluation for K.H. and reconvene the IEP team after the evaluation was complete.

2

(*Id.* at 30-31.) The continuing implementation of the pendent IEP had not denied K.H. a free and appropriate public education (FAPE), and therefore K.H. was not eligible for any compensatory public education.  (*Id.* at 29.)

    2.  <u>E.C.</u>

E.C., a kindergarten student during the 2018-19 school year, has Intellectual Disability, Autism Spectrum Disorder, and speech/language impairment. (*Id.* at 35-36.) E.C. had an IEP in place in 2017 that included specialized instruction, speech/language therapy, and behavioral support; most of these services were implemented in the typical preschool environment. (*Id.* at 37.) After reevaluations in the spring of 2018, the District proposed an IEP for the 2018-19 school year that would have placed E.C. in an autistic support classroom for the majority of the school day at a school that was not E.C.'s neighborhood school. (*Id.* at 39-41.) E.C.'s parents did not approve this IEP. (*Id.* at 42.) The 2017 IEP remained in place in the 2018-19 school year during the administrative hearing process. (*See id.* at 44.) The District also conducted additional reevaluations of E.C. in the fall of 2018. (*Id.* at 42-43.)

E.C.'s administrative hearing was before the same hearing officer as K.H.'s. The decisions were issued mere days apart, and they include similar reasoning. The hearing officer characterized E.C.'s complaint as presenting six discrete issues but noted that the "overarching contention" was that the District's proposed IEP "did not conform to the law with respect to the least restrictive environment." (*Id.* at 34.) The hearing officer found that the District's 2018 reevaluation of E.C. was insufficient and the proposed IEP was substantively inappropriate and not in compliance with LRE principles. (*Id.* at 55-61.) The decision ordered the District to implement a publicly-funded independent evaluation for E.C. and reconvene the IEP team after the evaluation was complete. (*Id.* at 66.) However, the hearing officer concluded that the IEP rightly included some level of

autistic support and ordered that the District should begin implementing those aspects of the proposed IEP immediately, but for not more than 90 minutes per day outside of the regular education environment. (*Id.* at 61-62, 65.) In reaching this conclusion, the hearing officer noted that the parties' major dispute was how much of the day E.C. should spend outside the regular education environment. (*Id.* at 62.) The hearing officer also found that the IEP's proposed placement had not been predetermined. (*Id.* at 61.) Finally, the decision concluded that the continuing implementation of the pendent IEP had not denied E.C. a FAPE, and therefore E.C. was not eligible for any compensatory public education. (*Id.* at 64.)

      3.  <u>E.K.</u>

E.K. was a kindergarten student in the 2018-19 school year. (*Id.* at 71.) E.K. has autism and a rare genetic condition that is associated with hearing loss, developmental delay, and hypotonia. (*Id.* at 70.) E.K. had an early intervention IEP in place in 2017. (*Id.* at 71.) After evaluations in the spring of 2018, the District proposed an IEP for the 2018-19 school year that would have placed E.K. in an autistic support classroom for 4.5 hours daily, which was nearly 70% of the school day, at a school that was not E.K.'s neighborhood school. (*Id.* at 72.) E.K.'s parents rejected this proposal, and the District then proposed placement in the autistic support classroom for half of the school day. (*Id.* at 73.) E.K.'s parents again rejected the proposed IEP and requested a due process hearing. (*Id.*)

The hearing officer found that the District's evaluation of E.K. satisfied the IDEA's procedural requirements, so E.K. was not entitled to a publicly-funded independent evaluation. (*Id.* at 80.) The decision also approved of the District's selected verbal behavior methodology to effectuate the IEP and the District's building selection for E.K. (*Id.* at 82-83.) The hearing officer found deficiencies with the proposed IEP, however. For example, the IEP lacked academic goals

and did not contain goals targeting E.K.'s identified needs in attention, focus, and age-appropriate social skills. (*Id.* at 81.) Most significantly, the hearing officer concluded that the District's proposed placement was inappropriately restrictive, predetermined, violated the LRE mandate, and denied the student a FAPE. (*Id.* at 82-84.) Therefore, the decision ordered that the District revise the IEP to place E.K. in a regular education classroom for no less than 65% of the school day and provide compensatory education. (*Id.* at 83-84.)

    4. <u>G.B.</u>

G.B. was a third-grade student in the 2018-19 school year. (*Id.* at 92.) G.B. has down syndrome, severe childhood apraxia of speech, and significant difficulty with articulation. (*Id.*) Prior to the due process challenge, G.B. had attended the neighborhood elementary school with IEPs in place from Kindergarten through third grade. (*Id.* at 93, 95-98, 101.) In October 2018, the District issued a reevaluation report for G.B. and proposed a revised IEP to place G.B. in an autistic support classroom for one-third of the school day at a school that was not G.B.'s neighborhood school. (*Id.* at 99.) At the time, G.B. was in general education for 80% of the school day at the neighborhood school. (*See id.* at 113.) G.B.'s parents rejected this proposed change and requested a due process hearing. (*Id.* at 99-100.)

The hearing officer concluded that the District's proposed change to G.B.'s IEP violated the LRE provision of the IDEA and had been inappropriately predetermined prior to the IEP meeting. (*Id.* at 112-22.) The decision instructed that G.B. should remain in the current placement at the neighborhood school and ordered the District to conduct training for all staff who participate in IEP meetings on the LRE requirement. (*Id.* at 129.) The decision also addressed three other issues that G.B. had raised in pre-hearing filings but did not argue in the post-hearing brief: (1) whether the District had denied G.B. a FAPE between 2016 and 2019; (2) whether the District

administered a reevaluation without parental consent; and (3) whether the District violated the ADA or Section 504. (*Id.* at 123-26.) The hearing officer stated G.B. had waived these issues. (*Id.*)

After the conclusion of all four administrative hearings, Plaintiffs sent their billing records for each matter to the District. The parties were unable to agree on payment, and now it is for the Court to decide the issue of attorneys' fees and costs.

## II.   LEGAL STANDARD

The IDEA allows courts to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). A party qualifies as a prevailing party if she succeeds on any significant issue in litigation that achieves some of the benefit sought. *J.O. ex. rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002).

The party seeking fees bears the burden of proving that its request is reasonable by submitting evidence supporting the hours worked and the rates claimed. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The adverse party has the burden of challenging the reasonableness of the requested fee. *Id.* "The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" *Id.* (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Once a party raises objections to the fee request, the court has significant discretion to adjust the fee award in light of those objections. *Id.*

A court begins the calculation of reasonable fees by calculating the "lodestar," "which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The court should assess a reasonable hourly rate according to the prevailing market rates in the relevant community, taking into account the experience and skill of the prevailing party's attorneys and the rates for similar services by

local lawyers of reasonably comparable skill, experience, and reputation. *Id.* The court should exclude hours that are excessive, redundant, or inadequately documented in the fee petition. *Id*. After these assessments, the resulting lodestar is presumed to yield a reasonable fee. *Washington v. Phila. Cty. Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996). But, if the prevailing party has achieved only partial success, the court may reduce the award to account for the significance of the overall relief obtained in relation to the hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

## III.    DISCUSSION

Plaintiffs' attorney Judith Gran seeks an award of $548,647.71 in attorneys' fees and costs for her firm's work on these four administrative hearings and the fee petition. (*See* Doc. No. 23-1, Mem. Law Supp. Mot. Att'ys' Fees at 16-17.) The District opposes Plaintiffs' motion on four different grounds. (*See* Doc. No. 24, Br. Opp'n Mot. Att'ys' Fees; Doc. No. 32, Surreply Br.) First, the District challenges the reasonableness of Gran's hourly billing rate of $590. Second, it argues that some of the hours charged are excessive, redundant, or vague. Third, the District suggests the Court reduce the lodestar by 50% to reflect Plaintiffs' partial success at the administrative hearings. Finally, the District seeks to exclude the costs for all of Plaintiffs' experts. Gran disagrees with each of the District's contentions. (*See* Doc. No. 26-1, Reply Br.)

### A.    Hourly Billing Rate

Gran's hourly rate was $525 when Plaintiffs commenced this action in November 2019. (Compl. ¶ 42.) After engaging in unsuccessful settlement efforts, Plaintiffs now seek a fee award for attorney Judith Gran at her current hourly billing rate of $590. The District contends Gran's increased rate is unreasonable and should be limited to $525 per hour. Attorneys Amelia Carolla and Catherine Reisman assisted Gran with preparation of the fee petition and paralegals Connie

Tracey and Tina Tilton assisted Gran with preparation for the hearings and fee litigation. The District only disputes Gran's hourly rate.

When awarding a reasonable hourly rate, the court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado*, 256 F.3d at 184 (3d Cir. 2001) (quoting *Rode*, 892 F.3d at 1183). The starting point in the court's inquiry is the attorney's usual billing rate, but this is not dispositive. *Id.* at 184-85. Reasonable hourly rates are based upon current rates at the time of the fee petition, not when the services were performed. *Lanni v. New Jersy*, 259 F.3d 146, 149 (3d Cir. 2001).

Gran is indisputably a highly experienced special education attorney. She has practiced disability rights law for 37 years and represented hundreds of special education students. (Doc. No. 23-6 [Gran Decl.] at ¶¶ 5-6.) Before joining her present firm, she served as Director of Disability Projects for the Public Interest Law Center of Philadelphia and was a founding member of the Council of Parent Attorneys and Advocates. (*Id.* ¶¶ 5, 7.) As of February 2020, Gran's customary hourly billing rate is $590. (*Id.* ¶ 42.) In support of her claim that this is a reasonable rate, Gran puts forward declarations from other members of the area's special education bar: Caryl Oberman, David J. Berney, and Ilene Young. (*See* Doc. No. 23-3 [Oberman Decl.]; Doc. No. 23-4 [Berney Decl.]; Doc. No. 23-5 [Young Decl.].) Oberman has been practicing nine years longer than Gran, in a practice of more than 90% special education law, and she charges an hourly rate that ranges from $425 to $625. (Oberman Decl. ¶¶ 1, 8, 13.) Berney avers that he has been practicing for 28 years, has operated a plaintiff-side special education law firm for 24 years, and charges $520 per hour. (Berney Decl. ¶¶ 2-3, 33.) Young has been practicing for 39 years, and in the last ten years 75% of her practice has arisen under the IDEA; she charges $450 per hour.

8

(Young Dec. ¶¶ 2-3, 12.) While all of these declarants aver that Gran's hourly rate of $590 is reasonable for an attorney of her reputation and experience in the community (*see* Oberman Decl. ¶¶ 25-26; Berney Decl. ¶ 45; Young Dec. ¶¶ 24-25), only Oberman claims to charge a similar rate at the upper end of her billing range.

The District sought to rebut this evidence with a declaration from attorney Karl Romberger, who has served as a special education hearing officer and now represents school districts in special education proceedings. (Doc. No. 24-2 [Romberger Decl.] ¶ 1.) Romberger's firm routinely negotiates attorney fee payment in special education disputes, which involves reviewing parents' attorney's billing reports. (*Id.* ¶ 7.) He prepared a summary of billing reports from special education attorneys in the Eastern District submitted to his firm between February and June 2020, organized by each attorney's years of general and specialized legal experience and claimed hourly rate. (*Id.* ¶¶ 7-10.) From this data, Romberger opined that a reasonable hourly rate for Gran is $525. (*Id.* ¶ 16.) The data includes a bill from Oberman at a rate of $525 per hour, and a bill from another attorney with 42 years of experience but fewer years in special education, Dennis McAndrews, at the same rate. (*Id.* ¶¶ 31, 33.) Plaintiffs counter that this data ignores the specific situations of those attorneys, including Oberman's billing range and a declaration from McAndrews in a previous case that his rates are below market. (*See* Doc. No. 26-2, [Carolla Supp. Decl.] ¶ 24, Ex. B [McAndrews Decl.] ¶ 7.) Plaintiffs also contend this Court should rely on the Community Legal Services ("CLS") fee schedule, which indicates an hourly rate of $650-$700 is appropriate for attorneys with more than twenty-five years of experience. (Mem. Law Supp. Mot. Att'ys' Fees at 11.) But, the declarations in the record are more relevant to the Court's inquiry and render reliance on the CLS Fee Schedule unnecessary.

Finally, Gran argues that $590 reflects reasonable annual increases of four percent to her hourly rate since 2017. Hourly rates that were set in previous court decisions for the same attorney and for the same type of work may constitute record evidence. *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012) (citing *Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir.1986), *vacated on other grounds*, 483 U.S. 1015 (1987)). A court in this District awarded Gran $525 per hour for her work in a similar IDEA case in 2017. *Sch. Dist. of Phila. v. Kirsch*, Civ. A. No. 14-4910, 2017 WL 131808, at *6 (E.D. Pa. Jan. 11, 2017), *aff'd*, 722 F. App'x 215 (3d Cir. 2018). Courts in this District have found that an annual fee increase of four or five percent is generally reasonable. *See, e.g.*, *Rena C. v. Colonial Sch. Dist.*, 442 F. Supp. 3d 858, 867 (E.D. Pa. 2020). Gran's hourly rate remained at $525 from 2017 through 2019, and she increased her rate to $590 per hour in February 2020. (Reply Br. at 3, 7.) Defendant argues this 12 percent increase between 2019 and 2020 is unreasonably large, while Plaintiffs contend it reflects a reasonable increase of four percent annually between 2017 and 2020.

There is no dispute that Gran's current hourly rate is the applicable rate for purposes of calculating her reasonable attorney's fees. And while a practitioner can reasonably increase her rates four percent each year, it is undisputed that Gran did not increase her hourly rate between 2017 and 2019. The Complaint filed in November 2019 states that Gran seeks fees at a rate of $525 per hour based on the prevailing rates charged by attorneys in the Eastern District. (Compl. ¶ 42.) Gran's current hourly rate can reasonably incorporate an annual increase of four to five percent above her 2019 rate, but the Court finds that a one-year increase of 12% is unreasonable. In light of this finding, and upon weighing the record concerning the prevailing rate in the special education community for attorneys of Gran's skill, experience, and reputation, the Court determines an hourly rate of $550 is reasonable for Judith Gran.

10

**B. Hours Billed**

The District next argues that Gran seeks reimbursement for an unreasonable number of hours spent on the administrative proceedings. It challenges specific hours on Gran's billing reports as either excessive, redundant, or inadequately documented in the fee petition and argues that these hours must be excluded from the lodestar calculation. The District relies on the testimony of Romberger who bases his opinion upon a review of the hearing officers' decisions in each case, the motion papers, and the billing records. (*See* Romberger Decl. ¶¶ 4-5.) The District does not dispute Plaintiffs' hours of paralegal work or any hours expended preparing the fee petition.

The Court should exclude any hours billed that are not reasonably expended. *Rode,* 892 F.2d at 1183. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.* The amount of time reasonably expended on preparation for an administrative due process hearing depends on the length of the hearing and the attorney's experience. *See E.C. v. Sch. Dist. of Phila.*, 91 F. Supp. 3d 598, 608 (E.D. Pa. 2015), *aff'd sub nom. E.C. v. Philadelphia Sch. Dist.*, 644 F. App'x 154 (3d Cir. 2016). A court may use the adverse party's billing records as relevant evidence to determine a reasonable number of hours for the services performed. *Id.* at 609. A court may also deduct hours not adequately documented in the fee petition. *Rode*, 892 F.2d at 1183. "A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Id.* at 1190 (internal quotation omitted).

    1. <u>K.H.</u>

K.H.'s due process hearing lasted four days and included 14 witnesses. (Doc. No. 23-7, [K.H. Billing] at 7, 9; Gran Decl. ¶ 30.) Plaintiffs seek compensation for 185.5 hours Gran spent

on K.H.'s administrative hearing and 5.3 hours of paralegal time. Defendant argues that Gran's billable time should be capped at 124.1 hours.

Specifically, the District challenges Gran's 82.1 hours writing a closing argument brief as excessive.[1] In assessing the reasonableness of a special education plaintiff's time to draft a due process hearing closing argument brief, the court may consider the length and complexity of the hearing, the volume of exhibits in the record, and the amount of time expended by defense counsel for the same task, keeping in mind that Plaintiff bears the burden of proof. *I.W. v. Sch. Dist. of Phila.*, Civ. A. No. 14-3141, 2016 WL 147148, at *16 (E.D. Pa. Jan. 13, 2016) (finding 95 hours reasonable to prepare post-hearing brief for a nine-day hearing with hundreds of exhibits where adverse counsel billed 72.6 hours for its brief). The District relies on the testimony of Romberger that 32 hours would be reasonable to review the hearing transcripts and compose a closing argument for a hearing of this duration, but Romberger did not review the administrative record. (Romberger Decl. ¶¶ 65-67; Doc. 26-3 [Gran Supp. Decl.] ¶ 67.) Gran argues that she spent many of these hours reviewing 59 exhibits that the District introduced at the hearing; she avers that she spent a total of 39 hours reviewing the District's documents and exhibits in this case. (Gran Decl. ¶ 30.) Gran states that she received many of these 59 exhibits "shortly before the hearing," but she also states that the hearing exhibits were admitted by agreement. (Gran Supp. Decl. ¶¶ 65-66.) Gran also spent "significant time" in preparation of the brief searching for legal authority on issues including predetermination and the appropriateness of the evaluation and the IEP. (Gran Supp. Decl. ¶ 65.) The District's counsel spent 62.2 hours on its own post-hearing briefing. (Carolla Supp. Decl. ¶ 32, Ex. J at 265, 274.)

---

[1] Gran disputes this calculation and states that she spent 81.9 hours on this task. (Doc. 26-3 [Gran Supp. Decl.] ¶ 65.) On a review of the billing records, the Court agrees with the District's total of 82.1 hours. (K.H. Billing at 9-11.)

Considering all of these facts, the Court finds Gran's expenditure of 82.1 hours was unreasonable for preparation of the closing argument brief. Specifically, the Court finds Gran's time spent reviewing the District's exhibits excessive, in light of her expertise and her additional time spent reviewing documents prior to the hearing. (*See, e.g.*, K.H. Billing at 7 (billing 8.8 hours to, *inter alia*, review documents and identify exhibits).) Gran's agreement for the admission of the District's exhibits also indicates that she had reviewed them—at least to some cursory degree— prior to the hearing. As a result, the Court finds a reduction of ten hours is appropriate and finds 72.1 hours reasonable for Gran's preparation of a post-hearing brief for K.H.

The District also challenges Gran's 3.1 hours spent reviewing a draft settlement agreement. The billing records reflect that this time included consultation and correspondence with clients and proposing changes on three different dates. (K.H. Billing at 2-3.) The District next seeks to exclude .2 hours Gran spent conferring with her partner about admissibility of evidence, which it argues is unnecessary because of Gran's experience level. The District also proposes decreasing Gran's .9 hours spent drafting a disclosure letter to .2 hours because it is an administrative task. Gran argues this time was spent compiling a list of potential witnesses to include in the disclosure. (Gran Supp. Decl. ¶ 58.) The Court finds the time expended for each of these entries reasonable and will not deduct these hours.

The District asserts that Gran's 5.1 hours on a motion to declare evidence admissible was excessive because such an administrative motion can be made in the form of an email and there is no time entry showing communication with opposing counsel to determine if the motion would be opposed. Gran contends that the motion was strenuously opposed by the District, which billed 11.1 hours to oppose the motion, and her time expended included legal research for the motion. (Gran Supp. Decl. ¶ 64; Carolla Supp. Decl. ¶ 32, Ex. J at 261, 265; *see* K.H. Billing at 8.) In light of this

evidence, the Court finds this expenditure reasonable. The District also seeks to exclude the 1.2 hours Gran spent researching verbal behavior for K.H.'s case as excessive because Gran spent 27.1 hours on such research across all four hearings in this petition. The Court does not find a mere 1.2 hours excessive for such research in K.H.'s matter.

The District also argues that two billing entries for K.H. are impermissibly vague because they reference actions for three Wissahickon students but do not specify the hours spent on the task for each student. (K.H. Billing at 5-6.) Where time is expended on multiple unrelated matters, courts have required that the party seeking reimbursement produce evidence of the amount of time spent on the matter underlying the litigation. *E.C.*, 91 F. Supp. 3d at 612. For one of these entries, Gran avers that this time was spent for K.H., E.C., and E.K. (Gran Supp. Decl. ¶ 59), so the Court will deduct .8 hours, or two-thirds of this 1.2-hour entry. Gran did not present the same explanation for the .3 hours entry to download records for three students, so the Court will exclude that .3 hours as insufficiently documented.

The District seeks to eliminate an entry for "Corr. [redacted] re communications with school community" as vague and unconnected to the case. Gran states this is correspondence with her clients. (Gran Supp. Decl. ¶ 68.) "Courts have repeatedly found time entries sufficiently specific if such entries merely indicate some sort of communication with a client without any exposition of the subject matter of the communication." *E.C.*, 91 F. Supp. 3d at 610. Therefore, the Court finds this entry reasonable. In total, the Court deducts 11.1 of Gran's hours for K.H.'s administrative proceeding.

    2.  <u>E.C.</u>

The parties called 12 witnesses over the course of three days at E.C.'s due process hearing. (Doc. No. 23-8, [E.C. Billing] at 5-7; Gran Decl. ¶ 31.) Plaintiffs seek compensation for 142.3

hours Gran spent on E.C.'s administrative hearing and 5 hours of paralegal time. Defendant argues that Gran's reasonable expenditure should be set at 104.1 hours.

Most significantly, the District challenges Gran's 51.2 hours writing a closing argument brief as excessive and argues that 24 hours would be a reasonable amount of time for this task. (Romberger Decl. ¶¶ 76-78.) Gran explains that a significant portion of her time preparing her post-hearing brief was spent reviewing the District's 50 hearing exhibits. (Gran Decl. ¶ 31.) She spent 13.3 hours reviewing the District's documents in total. (*Id.*) The District's counsel spent 48.6 hours on its post-hearing brief. (Carolla Supp. Decl. ¶ 31, Ex. I at 231, 238.) In light of the length and complexity of the hearing, and the fact that Defendant's counsel expended approximately the same amount of time on the same task, the Court finds Gran's expenditure of 51.2 hours reasonable to prepare the closing argument brief in E.C.

The District next seeks to reduce Gran's time spent drafting the Administrative Complaint Notice from 11.5 hours to 5 hours. (Romberger Decl. ¶¶ 70-71.) A court may consider the complexity of a case in determining the reasonable amount of time spent drafting a complaint. *I.W.*, 2016 WL 147148, at *13. Gran contends that this time includes review of E.C.'s records and drafting a fulsome complaint, which it includes in the record. (Gran Supp. Decl. ¶ 70; Carolla Supp. Decl. ¶ 27, Ex. E.) The billing records differentiate between 3.9 hours to "analyze IEP and draft due process complaint" and 7.6 hours to "draft complaint." (E.C. Billing at 2.) The District points out that Gran billed only 4.9 and 5.5 hours, respectively, to draft the Administrative Complaints in K.H. and G.B.'s cases. (*See* K.H. Billing at 2; Doc. No. 23-10 [G.B. Billing] at 2.) Upon review of these Administrative Complaints, they are substantially similar to E.C.'s, and K.H.'s Complaint was filed prior to E.C.'s. (*Compare* Carolla Supp. Decl. ¶ 27, Ex. E, *with* ¶ 25, Ex. C and ¶ 28, Ex. F.) In light of Gran's significant experience in the field and upon a review of

the Administrative Complaint for E.C., the Court finds Gran's 11.5 hours excessive. The Court permits 6.5 hours as reasonable for this task.

The District asserts that Gran's 3.3 hours on a motion to declare evidence admissible was excessive because such an administrative motion can be made in the form of an email, and there is no time entry showing communication with opposing counsel to determine if the motion would be opposed. Gran contends that the motion was strenuously opposed by the District, which billed 2.1 hours to oppose the motion. (Gran Supp. Decl. ¶¶ 63-64, 73-74; Carolla Supp. Decl. ¶ 31, Ex. I at 231.) But Gran admits that this motion addressed identical issues to the motion filed in K.H.'s case. (*See* Gran Supp. Decl. ¶¶ 73-74.) Gran billed 3.3 hours for drafting and filing the same motion for K.H. and E.C. on the same day. (*Compare* K.H. Billing at 8, *with* E.C. Billing at 5.) In light of the identical issues in these motions, the Court finds these hours duplicative and excessive. The Court allows a reasonable expenditure of 1.3 hours to file E.C.'s motion and deducts two hours.

The District seeks to exclude .9 hours Gran spent to research case law because it could have been assigned to a lower level associate. The Court does not find this short amount of time excessive for legal research; nor is it unreasonable for Gran—the only attorney handling the due process hearing—to complete such research herself. Finally, the District challenges Gran's .3 hours spent uploading and downloading exhibits and .1 hours drafting correspondence about the transcript because they are administrative tasks. It is reasonable for counsel to spend some amount of time on administrative tasks. *See Kirsch*, 2017 WL 131808, at *8; *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 395 (S.D.N.Y. 2000) (finding it "unreasonable to expect attorneys to delegate every ministerial duty they perform because '[t]he time spent delegating the task could well exceed the time spent by the attorney'"). Here, it was reasonable for Gran to expend such small intervals of time to complete these administrative tasks herself. Indeed, as Gran points out,

assigning some of these tasks could have taken as long as completing the task. In total, the Court deducts seven of Gran's hours for E.C.'s administrative proceeding.

3.  <u>E.K.</u>

Gran seeks compensation for 246.7 hours spent on E.K.'s administrative hearing. The complete billing records for E.K. were not appended to Plaintiff's motion because of a filing error. In opposition, Defendant argued that this should preclude Plaintiffs from recovering fees for E.K.'s matter because it was Plaintiffs' burden to prove the hours were reasonable for the work performed. In response, Plaintiffs filed the complete billing records for E.K., and the Court granted the District leave to file a surreply. The District points out that seven hours were actually billed by Plaintiffs' paralegals, thereby reducing Gran's hours to 239.7. (*See* Doc. No. 25-1 [E.K. Billing].) Upon review of the billing records, the Court agrees. The District's surreply did not otherwise challenge any particular entries on E.K.'s billing as unnecessary or vague. A district court "may not reduce the number of hours claimed by an attorney if the adverse party has declined to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure." *Bell v. United Princeton*, 884 F.2d at 719 (internal quotation omitted). Because the District has not disputed the hours Gran spent litigating E.K.'s due process complaint, the Court will not deduct any hours from the lodestar calculation.

4.  <u>G.B.</u>

G.B.'s due process hearing lasted three days and involved 18 witnesses. (Doc. No. 23-10, [G.B. Billing] at 6, 8-9; Gran Decl. ¶ 33.) Plaintiffs seek compensation for 252 hours Gran spent on G.B.'s administrative hearing and 8.3 hours of paralegal time. Defendant seeks to limit Gran's reasonable expenditure to 149.1 hours.

As a threshold matter, the District argues that none of Plaintiffs' work on the G.B. matter is compensable following Wissahickon's issuance of an offer of settlement on March 27, 2019. (Br. Opp'n Mot. Att'ys' Fees at 20 n.14.) Pursuant to the IDEA's implementing regulations, a parent who has received a written settlement offer may not be awarded attorneys' fees and costs for any work performed subsequent to the time of the written offer if the relief finally obtained is equal to or less favorable than the offer of settlement. *See* 34 C.F.R. § 300.517(c)(2)(i). The District argues that because its settlement offer in G.B.'s matter was more favorable than the hearing officer's decision, Plaintiff is not entitled to an award of fees for hours expended after the date of the offer. The District's offer was to place G.B. outside of the general education classroom for two hours per day, which is a regular education placement for less than 70% of the school day. (*See* Doc. 24-4, Offer Letter; Reply Br. at 20 n.5.) The hearing officer found that the District "was not justified in removing the student from the 80% regular education placement" and ordered the District to keep G.B. in the pendent IEP until such time as new IEP could be put in place. (Hr'g Officer Decisions at 118, 129.) Since the District's offer was for less time in a general education classroom than G.B.'s parents were ultimately awarded, it was less favorable than the hearing officer's decision, so the prohibition on fees after the settlement offer does not apply.

The District raises three specific disputes with Gran's billing in the G.B. matter. First, the District argues that Gran's billing of 19.6 hours to research literature on verbal behavior and compile potential exhibits was excessive and should be decreased by 75% to 4.9 hours. (Romberger Decl. ¶ 82.) In summary, Gran's billing records reveal the following entries comprising this contested 19.6 hours: (1) researching literature on verbal behavior, inclusive education, and Down Syndrome for 4.9 hours; (2) researching potential exhibits and preparing disclosure letter for 7.1 hours; and (3) analyzing research articles and preparing exhibit book for

7.6 hours. Gran spent 27.1 hours analyzing the literature on verbal behavior across these four students' hearings. (Gran. Decl. ¶ 34.) Gran explains that because the District insisted that the use of verbal behavior as a method for instructing students with Down Syndrome was supported by research, but largely declined to provide evidence of such research, she expended time trying to find research that did not exist to meet her burden of proof that the District's proposed methodology was inappropriate. (Gran Supp. Decl. ¶ 61.)  The Court accepts this explanation and finds each of the time entries comprising the contested 19.6 hours reasonable. The District also argues that the 7.1 hours to research potential exhibits and prepare disclosure letters is duplicative of the 5.5 hours Gran billed to analyze documents and draft the Administrative Complaint. (*See* Romberger Decl. ¶ 81; G.B. Billing at 2.) The Court disagrees and declines to deduct these hours.

Second, the District asserts that it was excessive for Gran to spend 32 "unsegregated" hours drafting proposed stipulations—presumably the parties' stipulations of facts. (*See* Hr'g Officer Decisions at 89, 92-100.) The Court agrees with Defendant that eight hours is reasonable to draft these stipulations. Gran contends 32 hours is not excessive because that time included many other activities besides drafting stipulations. (Gran Supp. Decl. ¶ 85.) Gran's bills for this time reflect three days of billing for 9.7 hours, 11 hours, and 11.3 hours, respectively. (G.B. Billing at 5-6.) One of these days bills 11.3 hours exclusively to revising proposed stipulations. (*Id.* at 6.) The other two days reflect various activities including drafting and revising stipulations, analyzing the District's exhibits, preparing questions for witnesses, and corresponding with parents, but the bills do not attribute designated time to these more specific entries. (*Id.* at 5-6.) While Gran's billing for these tasks is not so impermissibly vague as to require their exclusion entirely, these billing entries do not allow the Court to assess what proportion of the 32 hours was dedicated to the stipulations. Therefore, the Court must make an informed estimate. The time spent on the

stipulations was 11.5 hours at a minimum: 11.3 hours were billed exclusively for this task on a single day and at least .1 hours were attributable to stipulations on each of the other days. Estimating that Gran likely billed approximately 16 hours for completing the stipulations, the Court will deduct eight hours from these three days of billing.

Finally, the District argues Gran's 80.2 hours writing a closing argument brief is excessive and claims 24 hours would be a reasonable amount of time for this task. (Romberger Decl. ¶¶ 87-90.) Specifically, Romberger concludes Gran billed 42.2 hours writing the closing argument brief, and 38 hours analyzing hearing transcripts. (*Id*.) Gran's billing records specifically attribute 38.9 hours of post-hearing time to analyzing transcripts and exhibits. (G.B. Billing at 9-10.) In reply, Gran disputes this calculation of 38 hours analyzing transcripts; she avers "the actual amount of time spent analyzing transcripts was closer to 15 hours," and "the remainder of time entries Mr. Romberger cites include analyzing voluminous exhibits that the District chose to place in evidence." (Gran Supp. Decl. ¶ 88.) The District offered four large binders of hearing exhibits, and Gran spent 72.5 hours reviewing the District's documents in total. (Gran Decl. ¶ 33.) In fact, the hearing officer noted the unnecessarily voluminous record due to "thousands of pages of emails offered by the district[.]" (Hr'g Officer Decisions at 89.) District counsel spent 70.9 hours on its post-hearing brief. (Carolla Supp. Decl. ¶ 29, Ex. G at 132, 138.)

Considering all of these facts, the Court finds Gran's expenditure of 80.2 hours was slightly excessive for preparation of the closing argument brief because of the significant additional time Gran spent reviewing the District's exhibits prior to the hearing. (*See* Gran Supp. Decl. ¶¶ 85, 88; G.B. Billing at 6-8.) In light of the length and complexity of G.B.'s hearing record, and the amount of time expended by Defendant's counsel on the same task, the Court finds a reduction of four

hours is appropriate and finds 76.2 hours reasonable for Gran's preparation of a post-hearing brief. In total, the Court deducts 12 of Gran's hours for G.B.'s administrative proceeding.

### C. Reduction of the Lodestar for Partial Success on the Merits

A court should reduce the lodestar downward to account for time spent litigating wholly or partially unsuccessful claims. *Rode*, 892 F.2d at 1183. If the successful and unsuccessful claims involve a common core of facts, making it impossible to divide hours expended on a claim-by-claim basis, the district court should award the amount of fees that is reasonable in relation to the overall relief and degree of success obtained. *Hensley*, 461 U.S. at 435-46. But if the prevailing party has obtained excellent results, the award should not be reduced simply because she failed to prevail on every contention raised in the lawsuit. *Id.* at 435. The court should reject a mathematical approach to deducting fees proportional to the number of claims lost. *Id.* at 435 n.11; *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 151 (3d Cir. 2009).

The District advocates that the Court reduce the total merits lodestar and fee petition lodestar by 50% to reflect Plaintiffs' limited success in the administrative hearings. Gran contends that the lodestar should not be decreased because she achieved excellent results in each hearing, even though she did not prevail on all issues. It is undisputed that the unsuccessful claims were factually and legally related to the claims on which Plaintiffs did prevail, so it is impossible for the Court to determine the time expended on a claim-by-claim basis. Rather, the Court must focus on reducing the fees awarded to a reasonable amount in relation to the degree of success obtained.

### 1. K.H. and E.C.

Defendant significantly overstates Plaintiffs' relative lack of success in K.H. and E.C.'s due process proceedings. Parents prevailed on their claims that the District failed to properly evaluate both K.H. and E.C., rendering their 2018 IEPs substantively deficient and non-

conforming to the least restrictive environment requirement. (Doc 1-1, Hr'g Officer Decisions at 23-29, 55-64.)  The District was required to reevaluate both students at public expense and propose new IEPs based on the results of those evaluations. (*Id.* at 30-31, 65-66.)

Defendant argues that a 50% reduction is warranted because Plaintiffs were not denied a FAPE in the 2018-19 school year, did not prevail on their claims under Section 504 and the ADA, and were not awarded compensatory education, and therefore, only succeeded on three of the hearing's six core issues. (*See* Br. Opp'n Mot. Att'ys' Fees at 22.) The Court is not convinced by this reasoning. The hearing officer found in favor of K.H. and E.C.'s parents on nearly all of the core issues regarding the proposed 2018-19 IEPs—that the evaluations were insufficient, the IEPs were substantively inappropriate, and the District had failed to properly consider a less restrictive environment. Moreover, the hearing officer for K.H. and E.C.'s matters described that the parents' "primary objection" and "overarching contention" at the hearings was that the District's proposed IEPs failed to offer the least restrictive environment. (Hr'g Officer Decisions at 3-4, 34.) As discussed in section III.D *infra*, the hearing officer did not state explicitly whether the District had violated Section 504 and the ADA because it considered these statutes together with the IDEA claims. (*Id.* at 18, 51 ("the coextensive Section 504 and ADA claims that challenge the obligation to provide FAPE on the same grounds as the issues under the IDEA will be addressed together.").)

The hearing officer did conclude that the District's implementation of the pendent IEPs had not denied the students a FAPE, and thus did not award compensatory education. (*Id.* at 29, 64.) This finding justifies a small reduction in the lodestar, but not a 50% reduction. K.H.'s and E.C.'s parents also did not prevail on their claim that the proposed IEPs predetermined the students' placements. (*Id.* at 28, 61.) By Gran's own admission, predetermination was one of the four core issues in these cases. (Gran Decl. ¶ 20.) But despite finding no predetermination, the

students were still awarded substantial relief because of the proposed IEPs' deficiencies in the form of publicly-funded evaluations and new IEPs. Therefore, the Court finds that a 10% reduction is appropriate for the lodestar in both K.H. and E.C.'s matters.

2. E.K.

Plaintiffs prevailed on the most significant issues in E.K.'s due process hearing. The District's proposed IEP did not contain sufficient goals, was predetermined, and violated the IDEA's LRE mandate. (Hr'g Officer Decisions at 81-83.) The hearing officer determined E.K. had been denied a FAPE and awarded compensatory education and placement in a regular education classroom for no less than 65% of the school day. (*Id.* at 84.) However, the hearing officer approved of the District's proposed verbal behavior methodology for E.K.'s IEP and noted that a "substantial portion" of the due process hearing was dedicated to this topic. (*Id.* at 82.) Most significantly, Defendant argues, the District's educational evaluation was sufficient to satisfy the IDEA's procedural requirements so E.K. was not entitled to a publicly-funded independent evaluation. (*Id.* at 80.) The evaluation was one of the core issues in the hearing. (*See id.* at 70; Gran Decl. ¶ 20.) These findings justify a reduction in the lodestar, but not a 50% reduction.

Defendant also argues fees for E.K.'s matter should be decreased because the hearing officer found the District did not violate Section 504 and the ADA. (Br. Opp'n Mot. Att'ys' Fees at 23; Surreply at 3.) The Court disagrees with the District's contention on these claims. The hearing officer's decision is silent about Section 504 and the ADA. (*See* Hr'g Officer Decisions at 70-85.) The District's argument is based solely on the hearing officer's perfunctory concluding order that "any claims not specifically addressed in this order is (sic) Denied and Dismissed." (*Id.* at 85.) Such a statement does not independently justify a reduction of the lodestar because the Section 504 and ADA claims are substantively the same as the IDEA claim for denial of a FAPE,

which the hearing officer found. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012). Considering all of these facts, the Court finds a 20% reduction appropriate in E.K.'s matter.

  3. <u>G.B.</u>

  Plaintiffs obtained significant relief in G.B.'s due process hearing, and prevailed on many, but not all, of the issues presented. The hearing officer found the District's proposed change to G.B.'s IEP was predetermined and did not provide the LRE. (Hr'g Officer Decisions at 112-22.) As a result, the decision instructed that G.B.'s pendent IEP should remain in place and ordered the District to conduct staff training on the LRE requirement. (*Id.* at 129.) However, the hearing officer concluded that parents had waived several other issues that had been raised in pre-hearing filings, specifically: (1) whether the District had denied G.B. a FAPE between 2016 and 2019; (2) whether the District administered an I.Q. test without parental consent; and (3) whether the District violated the ADA or Section 504. (*See id.* at 123-26.) The District argues that a significant reduction is justified because parents waived five of the seven numbered issues in the hearing officer's decision. The Court will not adopt this mathematical view of the issues presented or the degree of success. Plaintiffs achieved substantial relief in requiring the District to keep the student's pendent placement and train staff. These other issues certainly do not encompass 70%, or even half, of the entire litigation. Nonetheless, Plaintiffs chose to pursue these additional claims concerning whether prior IEPs had denied G.B. a FAPE and whether the District had administered an I.Q. test without parental consent, and Gran presumably expended unnecessary time preparing these unsuccessful claims for litigation. In light of these findings, the Court concludes that a 20% reduction is appropriate for G.B.'s matter.

4. <u>Fee Petition</u>

District courts must conduct a separate lodestar analysis for the fees generated in litigating the fee petition and reduce the lodestar to reflect the prevailing party's partial success. *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985). Defendant has not challenged any of the hours expended preparing the fee petition, and they are adequately documented, so the Court will not deduct any hours as unreasonable. But, as described above, Plaintiffs are not entitled to all of the fees sought, and therefore were not entirely successful in the fee litigation. Plaintiffs expended significant time preparing evidence to justify Gran's billable rate, which the Court has declined to award, and some billable hours that were found unreasonable. Therefore, the Court finds appropriate a 20% lodestar reduction for the fees that accrued in preparing the fee petition. In summary, the Court awards Plaintiffs the following attorneys' fees:

**Fees for the K.H. Administrative Hearing**

| Attorney | Hours | Rate | Lodestar Total |
|---|---|---|---|
| Gran | 174.4 | $550 | $95,920 |
| Tracy | .8 | $100 | $80 |
| Tilton | 4.5 | $100 | $450 |
| Total | | | $96,450 |
| **Total after 10% reduction** | | | $86,805 |

**Fees for the E.C. Administrative Hearing**

| Attorney | Hours | Rate | Lodestar Total |
|---|---|---|---|
| Gran | 135.3 | $550 | $74,415 |
| Tracy | 5 | $100 | $500 |
| Total | | | $74,915 |
| **Total after 10% reduction** | | | $67,423.50 |

**Fees for the E.K. Administrative Hearing**

| Attorney | Hours | Rate | Lodestar Total |
|---|---|---|---|
| Gran | 239.7 | $550 | $131,835 |
| Tracy | 3 | $100 | $300 |
| Tilton | 4 | $100 | $400 |
| Total | | | $132,535 |
| **Total after 20% reduction** | | | $106,028 |

**Fees for the G.B. Administrative Hearing**

| Attorney | Hours | Rate | Lodestar Total |
|---|---|---|---|
| Gran | 240 | $550 | $132,000 |
| Tracy | 6.3 | $100 | $630 |
| Tilton | 2 | $100 | $200 |
| Total | | | $132,830 |
| Total after 20% reduction | | | $106,264 |

**Fees for the Fee Petition**

| Attorney | Hours | Rate | Lodestar Total |
|---|---|---|---|
| Gran | 10.4 | $550 | $5,720 |
| Reisman | 8.8 | $525 | $4,620 |
| Carolla | 34.4 | $480 | $16,512 |
| Tilton | 2 | $100 | $200 |
| Total | | | $27,052 |
| Total after 20% reduction | | | $21,641.60 |

### D.   Expenses and Costs

Finally, Plaintiff has sought to recover litigation expenses for each matter, including expert witness fees. The District argues that Plaintiffs are not entitled to any expert fees because they failed to succeed on any claim under Section 504 of the Rehabilitation Act or the ADA.

The IDEA does not provide for prevailing parties to recover the costs of experts or consultants. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300 (2006). The Rehabilitation Act, by contrast, states: "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved . . . under [Section 504]." 29 U.S.C. § 794a(a)(2). The Civil Rights Act expressly states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). As a result, many courts in this circuit have concluded that expert fees are recoverable for prevailing parties under Section 504, and the Court agrees. *See e.g.*, *A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*, Civ. A. No. 17-2311, 2019 WL 2715681, at *9 (M.D. Pa. June 28, 2019); *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762,

777 (M.D. Pa. 2012). Similarly, expert fees are litigation expenses recoverable under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002). Therefore, the question for the Court is whether Plaintiffs prevailed on any claims under Section 504 or the ADA.

Defendant argues that none of the four hearing officer decisions found a violation of Section 504 or the ADA. In G.B.'s matter, the hearing officer explicitly found that Plaintiffs had not proven a violation of Section 504 or the ADA. (Hr'g Officer Decisions at 125-26.) In E.C. and K.H.'s decisions, the hearing officer concluded that the issues presented had been fully addressed under the IDEA, so there would be "no further discussion of application of Section 504 or the ADA." (*Id.* at 29, 64.) Similarly, in E.K.'s decision, the hearing officer was silent as to any violation of Section 504 or the ADA. (*Id.* at 70-85.) Plaintiffs argue that, despite these statements and omissions in the decisions, they proved violations of Section 504 and the ADA because they were prevailing parties under the IDEA. Plaintiffs premise this conclusion on the logic that "a violation of IDEA is necessarily a violation of Section 504 and the ADA[.]" (Reply Br. at 26.)

The Court disagrees with Plaintiffs' premise. The Third Circuit has held that a violation of the IDEA is not a *per se* violation of the Rehabilitation Act § 504. *Andrew M. v. Del. Cty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 349 (3d Cir. 2007). Even if a violation of the IDEA and Section 504 are premised on the same facts, parents still bear the burden of proof for each claim independently. *See id.* A violation of Section of 504 occurs when: (1) the student is disabled as defined by the Act; (2) the student is otherwise qualified to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) the student was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *Id.* at 350 (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999)). The implementing regulations for Section 504 specify that federally-funded schools

27

"shall provide a free appropriate public education" to each qualifying disabled student. 34 C.F.R. § 104.33(a). Provision of a free and appropriate public education (FAPE) in compliance with Section 504 requires that a district educate disabled students "with persons who are not handicapped to the maximum extent appropriate" and provide a tailored evaluation to assess a student's specific areas of educational need for before placement. 34 C.F.R. §§ 104.33(b)(1), 104.34(a), 104.35. Implementation of an IEP that meets IDEA standards is also a means of providing a FAPE in compliance with Section 504. *See* 34 C.F.R. § 104.33(b)(2). Accordingly, the Third Circuit has concluded that "[t]here appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007). "[T]he substantive standard for determining liability under the Rehabilitation Act and the ADA are the same . . . ." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012); *see also Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995) (describing the ADA regulation requiring services "in the most integrated setting appropriate" as nearly identical to a Section 504 implementing regulation, 28 C.F.R. § 41.51(d) (1981)).

Here, G.B.'s hearing officer explicitly found the parents did not prove a violation of Section 504 or the ADA. (Hr'g Officer Decisions at 125-6.) Because parents bear the burden of proof for Section 504 and ADA claims independent of the IDEA, G.B.'s parents are not the prevailing party on these claims. By contrast, the hearing officers in K.H., E.C., and E.K.'s matters were silent as to whether the parents prevailed under Section 504 and the ADA. The District argues that this silence constitutes a denial of Plaintiffs' claims under Section 504 and the ADA, but the Court disagrees with this characterization. All of these parents had explicitly sought relief under the IDEA, Rehabilitation Act § 504, and the ADA (Carolla Supp. Decl. ¶¶ 26-28, Exs. D, E, F), so a

determination of their prevailing party status on the Section 504 and ADA claims requires an assessment of the hearing officers' findings.

The hearing officer for K.H. and E.C. held that the proposed 2018-19 IEPs had deprived the students of their rights to an appropriate evaluation, a substantively appropriate IEP, and proper consideration of education in the least restrictive environment (LRE). (Hr'g Officer Decisions at 23-29, 55-64.) Like the IDEA, Section 504 requires disabled school-age children to receive appropriate evaluations, IEPs, and education in a mainstream environment to the maximum extent appropriate. *See* 34 C.F.R. § 104.33-35. Therefore, these findings indicate that the parents of K.H. and E.C. are prevailing parties under both the IDEA and Section 504 of the Rehabilitation Act. E.K.'s hearing officer explicitly found that, because E.K.'s IEP was inappropriate, predetermined, and overly restrictive, "[t]he District violated the Student's right to a FAPE," and awarded E.K. compensatory education for having been denied an educational benefit. (*Id.* at 84.) Denial of a FAPE because of a student's disability is unquestionably a violation of both the IDEA and Section 504; therefore, E.K.'s parents are also prevailing parties under Section 504.

In support of its claimed expert costs, Plaintiffs submit the Curriculum Vitae of their expert Kathleen Whitbread (Doc. No. 23-11) and itemized hourly bills from Whitbread for K.H.'s matter totaling $8,084.77 (K.H. Billing at 13), for E.C.'s matter totaling $7,789.52 (E.C. Billing at 10-11), and for E.K.'s matter totaling $7,373.27 (E.K. Billing at 19-20.). Plaintiffs also submit an expense report showing these entries plus another entry of $415.50 for expert travel in each case. (K.H. Billing at 12, E.C. Billing at 9, E.K. Billing at 17-18.) Gran explains the $415.50 is one-third of the cost of Whitbread's trip to observe K.H., E.C., and E.K.—which the families of these students split evenly—and attaches travel receipts supporting this calculation. (Gran Decl. ¶¶ 39-40; Doc. No. 23-12.) Certain of Whitbread's itemized charges are duplicative of these receipts.

(*Compare* Doc. No. 23-12, *with* E.C. Billing at 11, E.K. Billing at 20.) Therefore, the Court will deduct Whitbread's billing for "Hotel", "Airport parking", and "Rental car" in October 2018 because it is duplicative of the separately billed travel receipts. (E.C. Billing at 11, E.K. Billing at 20.) The District does not challenge the reasonableness of any of the expert fees besides arguing that the recovery is not permissible because Plaintiffs did not prevail under Section 504 or the ADA. Therefore, the Court may not *sua sponte* address whether the expert's rate or hours expended are reasonable, since Plaintiffs have presented evidence to support the hours worked and rates claimed. *See Bell*, 884 F.2d at 720 (3d Cir. 1989).

In summary, the Court awards Whitbread's itemized expert fees and expenses for K.H., E.C., and E.K.'s due process hearings but declines to award any expert fees for G.B.'s matter. The District does not dispute any of Plaintiffs' other litigation expenses. Therefore, the Court awards Plaintiffs the following fees and expenses:

|  | Expert Fees | Hand Delivery | Copying | Legal Research | Filing Fee | Postage | Process Server | Subtotals |
|---|---|---|---|---|---|---|---|---|
| K.H. | $8,500.27 | $45 | $169.72 | $188.30 |  |  |  | $8,903.29 |
| E.C. | $7,925.26 | $45 | $61.80 | $35 |  |  |  | $8,067.06 |
| E.K. | $7,509.01 | $45 | $772.43 | $12.91 |  |  |  | $8,339.35 |
| G.B. |  |  | $213.80 | $55.61 |  |  |  | $269.41 |
| Fee Petition |  |  | $21 | $102.80 | $400 | $55.88 | $68 | $647.68 |
| **Total** |  |  |  |  |  |  |  | $26,226.79 |

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the Plaintiffs' Motion for Attorneys' Fees and Costs, and awards $414,388.89 in total attorneys' fees and expenses. An Order consistent with this Memorandum will be docketed separately.